GISKAN SOLOTAROFF & ANDERSON LLP
Jason L. Solotaroff
David O'Brien
90 Broad Street
New York, New York 10004
(212) 847-8315
*Attorneys for the Plaintiff*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| EDWARD KIM, M.D., | : | |
| | : | CIVIL ACTION NO.: 6:22-cv-521 (DNH/ML) |
| Plaintiff, | : | |
| | : | |
| v. | : | **DEMAND FOR JURY TRIAL** |
| | : | |
| BASSETT MEDICAL CENTER, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## **COMPLAINT**

Plaintiff Edward Kim, M.D., by and through his undersigned counsel, brings this

Complaint against Defendant Bassett Medical Center, for damages and injunctive relief under

the antidiscrimination and antiretaliation provisions of Title IX of the Education Amendments of

1972, 20 U.S.C. §§ 1681-1688 ("Title IX"), New York State Human Rights Law, N.Y. Exec.

Law § 296(7) ("NYSHRL"), and New York's medical whistleblower statute, New York Labor

Law § 741 ("Labor Law §741").

## I.      **PRELIMINARY STATEMENT**

1.      This action alleges that Defendant Bassett Medical Center ("Bassett"), a teaching

hospital located in Cooperstown, New York, violated Title IX and Labor Law §741 when it

terminated Plaintiff Edward Kim, M.D. ("Dr. Kim"), from Bassett's medical internship program.

2.      Dr. Kim was at the time completing a "Transitional Year Residency Program" at Bassett in order to fulfill a prerequisite to a medical residency at Loma Linda Medical Center's Department of Radiology, scheduled to begin in July 2022.

3.      Beginning in September 2021, Dr. Kim raised concerns to his supervisors at Bassett about patient safety. In retaliation, over several months, Bassett targeted Dr. Kim with pretextual, false, and unfair professional and academic complaints which Dr. Kim was able to rebut. Thereafter, on March 3, 2022, Bassett lodged complaints of sexual misconduct against Dr. Kim.

4.      In considering these complaints, Bassett failed to utilize the procedures required by Title IX for complaints of sexual misconduct. Specifically, Bassett failed to place upon itself the burden of proof and the burden of gathering evidence, failed to provide an equal opportunity for the parties to present witnesses, including fact and expert witnesses, and to present other inculpatory and exculpatory evidence, failed to assume the innocence of the accused until the conclusion of the process, and failed to notify Dr. Kim, in writing or otherwise, of: the identities of the parties involved in the alleged incidents; the conduct allegedly constituting sexual harassment; and the date and location of the alleged incidents.

5.      Using a process that disregarded the required safeguards, Bassett found that Dr. Kim had committed sexual harassment and terminated him from the program on March 4, 2022. In doing so, Bassett favored the complainant and discriminated against Dr. Kim on the basis of sex: Bassett provided the suspected female complainants with opportunities to present witnesses and evidence while denying such opportunities to Dr. Kim, who is male, and Bassett presumed Dr. Kim's guilt and placed upon Dr. Kim the burdens of proof and gathering evidence, because of his sex.

6.      Dr. Kim sought review of the decision pursuant to Bassett's internal process. A hearing panel, which again ignored the Title IX requirements, upheld the termination on April 7, 2022. Dr. Kim immediately appealed this decision. Bassett delayed decision on the appeal for over 30 days, until May 13, 2022, when it upheld the termination decision.

7.      After the termination on March 4, 2022, Dr. Kim retained counsel and filed a complaint with the EEOC alleging sex discrimination. Dr. Kim's counsel attempted to contact Bassett's general counsel to determine when and how Dr. Kim should vacate his apartment, which was in Bassett student housing. Two days later, Dr. Kim received an eviction notice from Bassett. Bassett then informed Dr. Kim in writing that they would withdraw the eviction notice if he withdrew his EEOC complaint.

## II.      JURISDICTION AND VENUE

8.      The Court has subject matter jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

9.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this district and a substantial part of the events or omissions giving rise to the claim occurred in this district.

## III.      PARTIES

10.      Plaintiff Edward Kim, M.D., is a current resident of Queens, New York.

11.      Defendant Bassett Medical Center is a teaching hospital located in Otsego County, New York.

### IV.    FACTUAL BACKGROUND

#### A. Dr. Kim's Background.

12.     Dr. Kim, who is male, is a recent graduate of Albany Medical School. In June 2021, Dr. Kim entered an PGY-1 preliminary internship at Bassett Medical Center. Prior to starting at Bassett, Dr. Kim was accepted into a four-year residency program in radiology at Loma Linda Medical Center, beginning in July 2022, conditioned on Dr. Kim completing a preliminary PGY-1 internship.

#### B. Bassett's Troubled Residency Program.

13.     For several years prior to Dr. Kim's internship, Bassett received generally negative satisfaction surveys from its resident doctors, and in January 2021 it received a "Continued Accreditation with Warning" from the Accreditation Council for Graduate Medical Education ("ACGME"). This warning is a significant step towards losing accreditation and related federal funds.

#### C. Dr. Kim Raises Patient Safety Issues and Bassett Retaliates Against Him.

14.     Shortly after beginning the internship, Dr. Kim raised concerns to his supervisors about patient safety. For example, Dr. Kim expressed concern at the insufficient or incorrect information provided when a patient's care is handed off from one physician to another.

15.     Initially, raising legitimate concerns drew praise for Dr. Kim. For example, the internal medicine program director, Dr. Edward Bischof, wrote to Dr. Kim on September 2, 2021, "Ed I can't thank you enough for being willing to share your observations and concerns regarding patient handoffs at morning report. Your commitment to providing high quality care to our patients is so appreciated and we will do our best to make changes to improve hand-offs.

Also, your professional, mature approach to this situation is something I will take with me and learn from. Sincerely, Dr. B."

16.     However, when Dr. Kim continued to raise concerns, regarding continuing patient safety issues as well as violations of the N.Y State Department of Health and ACGME rules setting a maximum of 80 duty hours for medical residents, those at Bassett began to target Dr. Kim with pretextual and unfair professional and academic concerns.

17.     For example, on November 2, 2021, Dr. Kim's supervising chief resident in the surgery unit, Dr. Karl Damroth, told Dr. Kim that he was not completing tasks on a timely basis. When Dr. Kim responded that he was covering 17 patients while the other three interns in the unit collectively were covering under 10 patients, and voiced related patient safety concerns, the surgery program director Dr. Joon Shim demanded that Dr. Kim submit to a psychological evaluation. When Dr. Kim asked the basis for such an evaluation, Dr. Shim backed off, reducing the demand to a recommendation, and providing no further explanation.

18.     Dr. Kim later met with Dr. Henry Weil, the senior associate dean for the Columbia-Bassett program, and requested a transfer out of the surgery unit, and was transferred to the medicine unit. After Dr. Kim requested the transfer, he was told by Dr. Bischof that he has to learn to "play ball."

19.     In another example, in January 2022, Dr. Kim and another intern in the medicine unit each worked more than 80 hours in one week, the first time Dr. Kim had done so. The other intern was given an extra weekend day off, but Dr. Kim was not.

20.     When Dr. Kim complained about the unequal treatment, and the violation of the maximum duty hour regulations, the interim internal medicine program director, Dr. Bischof

began aggressively questioning Dr. Kim about his work schedule stating, "[t]his residency could go on probation."

21.     On February 10, 2022, Dr. Riesenfeld and Dr. Moore called Dr. Kim into a meeting. Instead of talking about the concerns raised by Dr. Kim, they confronted him with accusations of professional mistakes and misconduct.

22.     These allegations were made by a senior resident, Dr. Yuri Choi, who the previous fall had initiated a sexual relationship with Dr. Kim. When Dr. Kim ended the relationship, Dr. Choi became very angry. Dr. Kim requested that he not be supervised by Dr. Choi any longer which Bassett granted for some time before moving Dr. Kim back to Dr. Choi's supervision in early February 2022.

23.     Dr. Kim rebutted each accusation (except for one minor incident of lateness that Dr. Riesenfeld acknowledged was not important), and all in the meeting agreed that the matter was settled and the concerns were not material.

24.     After this meeting, Dr. Choi continued to publicly berate and falsely accuse Dr. Kim. In response, on February 25, 2022, Dr. Kim provided a partially negative evaluation of Dr. Choi. The evaluation was a routine and protected activity made under ACGME guidelines, prompted by Bassett.

25.     Three days later, on February 28, 2022, Dr. Kim was called into another meeting with Drs. Riesenfeld and Moore. During this meeting, Bassett faculty raised the same accusations as discussed and "settled" in the prior meeting. Dr. Moore told Dr. Kim that Dr. Kim carried the burden of disproving the accusations against him.

26.     Immediately after the meeting, Dr. Kim provided photographic evidence that Dr. Choi had falsely made at least one accusation: Dr. Choi had accused Dr. Kim of not writing a

particular note on a patient's chart. Dr. Kim later that month produced a photograph showing that exact note indicating that he had written it *and* that Dr. Choi had signed off on the note, which Dr. Riesenfeld and Dr. Moore (Dr. Choi's supervisor) conceded shows that Dr. Choi's accusation was unmistakably and intentionally false.

27.     For another accusation—that he had an unexcused absence—Dr. Kim pointed out that his superiors had approved the time off for a medical appointment. Dr. Riesenfeld acknowledged that interns have no standard way for reporting medical time off, and that "this was my fault." Nevertheless, Dr. Riesenfeld provided Dr. Kim with a performance improvement plan, which Dr. Kim did not sign.

### D. Bassett's Retaliation Culminates With Sexual Harassment Accusations.

28.     On March 3, 2022, Dr. Kim was summoned to a meeting with the human resources department. At the meeting, Dr. Kim was blindsided with questions regarding whether he had ever made sexually explicit comments to others at Bassett. Dr. Kim strongly denied each accusation, and repeatedly asked for information crucial to disproving the accusations, such as the persons making the accusations, where and when they supposedly occurred, and who it was claimed was present. Bassett representatives refused to provide those details each time.

29.     Dr. Kim was told that multiple residents had spoken with an investigator looking into the aforementioned concerns, and reported that Dr. Kim had made inappropriate, sexual comments to them.

30.     Immediately after the meeting on March 3, Bassett suspended Dr. Kim. Dr. Kim requested a follow up meeting but was not provided any information with which he could disprove the accusations against him. A subsequent meeting was held on March 4 with the same participants as the March 3 meeting, during which Dr. Kim implored those conducting the

investigation to allow him some way to rebut the anonymous and vague allegations lodged against him. Again, Dr. Kim was denied.

31.     Bassett terminated Dr. Kim that night for sexual harassment. Dr. Kim had never been disciplined before in an academic setting and had never been accused of misconduct of any kind.

32.     Dr. Kim sought a review of the decision, to which he is entitled according to Bassett's standard procedures. At the hearing on March 29, 2022, Dr. Kim repeated his concerns that he could not participate in his own defense or even cooperate in the investigation without more information about the accusations against him.

33.     Although Dr. Kim did not know the source of the allegations against him, Dr. Kim informed those at the hearing about his past relationship with Dr. Choi, that she had been supervising him at the time, and that he viewed her hostile treatment of him as retaliation for him ending the relationship. Bassett was aware that Dr. Choi had recently fabricated accusations of academic misconduct against Dr. Kim.

34.     On April 7, 2022, the Panel issued a hearing summary upholding Bassett's decision to terminate Dr. Kim. The summary contains a number of falsehoods. For example, the summary says, "The Program and Human Resources staff took care to consider the facts and to provide Dr. Kim with a full and fair opportunity to raise any issues, concerns, or explanations, and to identify witnesses and/or documents. Dr. Kim provided no explanation and no alternative view." In reality, Dr. Kim said, "It was what you had said, Jen, about whether I could provide more information that would be helpful. I actually do, I do want to provide as much information, I do want to cooperate and give you as much, but I was trying to find people, and I was like, I know people who will clear my name, but I realized that since I don't know exactly what was

said about what I did or who said it or when it was, it's difficult for me to say, 'No this person was working with me at the time, so...' And it's also important for me for my professionalism and for me to learn from everything, so do you think you can help me out here so I can give you all the information that you need?" The response was no.

35.    Another falsehood in the hearing summary is that "Dr. Kim had been removed from the surgery service in November 2021 after a number of residents and attending physicians had raised concerns about him." In reality, Dr. Kim requested a transfer out of the surgery service because he was told to take a psychological examination in retaliation for raising patient safety concerns, after which he was told that he had not "learned to play ball."

36.    The hearing summary contains no indication that Bassett performed any follow up investigation in light of Dr. Kim's revelation of the relationship with Dr. Choi and her subsequent retaliation, even though Bassett was already aware that Dr. Choi had previously falsely accused Dr. Kim of academic misconduct.

37.    Bassett issued its decision upholding the termination on May 13, 2022.

**E. Bassett Disregards The Procedural Safeguards Required By Title IV Regulations.**

F.    Bassett is an educational institution receiving funding from the federal government and is a "Recipient" institution under Title IX as defined by C.F.R. § 2555.105.

G.    The United States Depart of Education has issued regulations pursuant to Title IX setting forth requirements for a Recipient's grievance process for dealing with formal complaints of sexual harassment. 34 C.F.R. § 106.45. According to 34 C.F.R. § 106.45(a), "[a] recipient's treatment of a complainant or a respondent in response to a formal complaint of sexual harassment may constitute discrimination on the basis of sex under title IX."

H.    These requirements include:

    a.   A recipient's grievance process must assume the innocence of the accused until the conclusion of the process. 34 C.F.R. § 106.45(b)(1)(iv).

    b.   A recipient must provide the accused with sufficient details of the alleged harassment including the identities of the parties involved in the incident, if known, the conduct allegedly constituting sexual harassment under § 106.30, and the date and location of the alleged incident, if known. The written notice must include a statement that the respondent is presumed not responsible for the alleged conduct and that a determination regarding responsibility is made at the conclusion of the grievance process." 34 C.F.R. § 106.45(b)(2)(i)(B).

    c.   A recipient must inform the parties in writing that the respondent is presumed innocent and has the right to the assistance of counsel who may inspect and review evidence. *Id.*

I.    The Recipient carries the burden of proof and the burden of gathering evidence. 34 C.F.R. § 106.45(b)(5)(i).

J.    The Recipient must "[p]rovide an equal opportunity for the parties to present witnesses, including fact and expert witnesses, and other inculpatory and exculpatory evidence." 34 C.F.R. § 106.45(b)(5)(ii).

K.    Bassett's treatment of Dr. Kim violated these all of the aforementioned requirements.

L.    Although Dr. Kim suspected that the five residents were Dr. Choi and several of her close friends, Bassett refused to identify the residents who had complained about him.

M.    The failure to follow these requirements tipped the scales in favor of the female complainant, presumably Dr. Choi, and constituted sex discrimination in violation of Title IX. Bassett withheld from Dr. Kim information available to the presumably female complainants which would have permitted Dr. Kim to present witnesses and evidence in his defense. Bassett exclusively credited accounts from the presumably female complainants, even though Bassett was aware that Dr. Choi had previously lied in an attempt to harm Dr. Kim's standing in the residency program and had no reason to question Dr. Kim's credibility. Moreover, the hearing summary contains false information where the truth would have been favorable to Dr. Kim, indicating a bias against him.

N.    After the termination, Dr. Kim retained counsel and filed a complaint with the EEOC alleging sex discrimination. Dr. Kim's counsel reached out to Bassett's general counsel to determine when and how Dr. Kim should vacate his apartment, which is in Bassett student housing. Bassett's counsel did not respond. Two days later, Dr. Kim received an eviction notice from Bassett. Bassett then informed Dr. Kim in writing that they would withdraw the eviction notice if he withdrew his EEOC complaint.

O.    As a result of the termination, Dr. Kim will not complete the prerequisites necessary to begin the radiology residency program at Loma Linda Hospital, to enter into another residency training program, and having not completed one year of postgraduate training, will be ineligible to receive a medical license.

P.    In effect, this termination, combined with Bassett's failure to decide Dr. Kim's appeal on a timely basis, as required by its own procedures, will severely endanger Dr. Kim's career in medicine.

## V.     CLAIMS FOR RELIEF

### COUNT ONE
**(Discrimination on the basis of sex in Violation of Title IX of the Education Amendments – 20 U.S.C. § 1681(a))**

Q.     Plaintiff hereby re-alleges and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

R.     Defendant, which operated an educational program receiving federal financial assistance, excluded Plaintiff from participation in, and denied him the benefits of, the program, and discriminated against Plaintiff on the basis of his sex in violation of Title IX.

### COUNT TWO
**(Retaliation in Violation of Title IX of the Education Amendments – 20 U.S.C. § 1681(a))**

S.     Plaintiff hereby re-alleges and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

T.     Defendant violated 20 U.S.C. § 1681(a) when it retaliated against him for his complaint of sex discrimination by evicting him from student housing after he declined to withdraw a complaint of sex discrimination filed with the EEOC.

### COUNT THREE
**(Retaliation in Violation of N.Y. Lab. Law § 741)**

U.     Plaintiff hereby re-alleges and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

V.      Defendant violated N.Y. Lab. Law § 741(2)(a) when it terminated Plaintiff in retaliation for Plaintiff disclosing good faith concerns regarding the improper quality of patient care.

## COUNT FOUR
### (Retaliation in Violation of NYSHRL and New York Executive Law § 296(7))

W.      Plaintiff hereby re-alleges and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

X.      The New York State Human Rights Law ("NYSHRL") and N.Y. Exec. Law §296(7) provide that an employer commits an unlawful practice when it retaliates against someone because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified, or assisted in any proceeding under this article. Defendant violated the NYSHRL and N.Y. Exec. Law §296(7) when it retaliated against him for his complaint of sex discrimination by evicting him from student housing after he declined to withdraw a complaint of sex discrimination filed with the EEOC. evicted Plaintiff from student housing in retaliation for Plaintiff filing an EEOC complaint.

## VI. DEMAND FOR RELIEF

**WHEREFORE**, the Plaintiff requests that this Court issue a judgment:

A.      Declaring that Defendant violated Title IX and New York Labor Law §741 in its conduct toward Plaintiff;

B.      Reinstating Plaintiff to the Transitional Year Residency Program;

C.      Directing Defendant to remove from Plaintiff's record any findings or conclusions produced in connection with the investigation into Plaintiff or any resulting proceedings;

D.      Enjoining Defendant, upon Plaintiff's reinstatement, from unlawfully discriminating or retaliating against Plaintiff;

E.      Granting Plaintiff compensatory damages, including but not limited to back pay and lost future compensation and damages for emotional distress,

F.      Granting Plaintiff attorney's fees, the costs and disbursements of this action; and

G.      Granting such other and further relief as the Court deems just and proper.


Dated:          New York, New York
                May 18, 2022

                                        Respectfully submitted,


                                        GISKAN SOLOTAROFF & ANDERSON
                                        LLP

                                        ____s/_____
                                        Jason L. Solotaroff
                                        David O'Brien
                                        90 Broad Street
                                        New York NY 10004
                                        (646) 964 9640

14